## IN THE UNITED STATES BANKRUPTCY COURT

FILED

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MATTHEW JAMES TRIERWEILER and | ) | Case No. 10-20499 |
| SHANNON RENEE TRIERWEILER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| RANDY L. ROYAL, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-2035 |
| | ) | |
| FIRST INTERSTATE BANK, a | ) | |
| Corporation, its assigns and successors, | ) | |
| and MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| its assigns and successors. | ) | |
| | ) | |
| Defendants. | ) | |

2:55 pm, 11/21/11

Tim J. Ellis
Clerk of Court

## **OPINION ON COMPLAINT**

On July 20, 2011, this adversary proceeding came before the court for trial on the

Complaint to Avoid Lien filed by Randy Royal, Trustee ("Trustee") and the Answer filed

by First Interstate Bank ("First Interstate") and Mortgage Electronic Registration

Systems, Inc. ("MERS"). The Trustee was represented by Stephen Winship and Bradley

Hunsicker. First Interstate was represented by Timothy Stubson. MERS was represented

by Robert Pratte. The court considered the testimony and other evidence, the arguments

of the parties, and applicable law and is prepared to rule.

**Jurisdiction**

This court has jurisdiction over this complaint under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under § 157(b)(2)(F). Movant brings this complaint under 11 U.S.C. §544(a)(1) and (3).[1]

**Findings of Fact**

The facts of the case are undisputed. On March 16, 2009, Debtors obtained financing to purchase real estate located at 10 Eagle Ridge Trail in Dayton, Wyoming, through First Interstate by executing a promissory note ("Note"). The Note was payable to the order of First Interstate.

The Debtors executed a mortgage ("Mortgage") on that same day. The Mortgage describes MERS as the "mortgagee" and First Interstate as the "Lender." The Mortgage also includes the language: "MERS is a separate corporation that is acting solely as a nominee for Lender..." Thereafter, Fannie Mae purchased the loan and the Note was endorsed in blank by Ms. Donna L. Hoover, Vice President of First Interstate and transferred to Fannie Mae. Fannie Mae, through its custodian, Bank of New York, was in possession of the Note on the date that the Debtors' bankruptcy petition was filed.

The Debtors filed for chapter 7 bankruptcy protection on May 3, 2010. The Trustee was appointed to administer the case. First Interstate requested relief from the automatic stay to proceed to foreclose its security interest on May 20, 2010. The request

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

Page 2

was denied by the Order entered August 23, 2010. The court found that the "Bank had

failed to meet its burden that it was a real party in interest or that it had authority to act on

behalf of the real party in interest."

## Discussion

In the complaint, the Trustee seeks to avoid First Interstate's position as a

secured creditor alleging that there was a separation of the Note and Mortgage, as

of the commencement of the case, rendering the Note unsecured and subject to the

avoiding powers of the Chapter 7 bankruptcy Trustee under § 544(a)(1) and (3).

## Was the Mortgage unperfected and enforceable on the date that the Debtors filed for bankruptcy protection?

The Trustee alleges that as MERS is defined as "mortgagee" in the

Mortgage, that designation splits the note from the mortgage, making the

mortgage unsecured. For an understanding of the issue before the court, it must

first focus on the MERS system. The Court of Appeals for the Ninth Circuit,

succinctly described MERS,

"...as a private electronic database, operated by MERSCORP, Inc.,
that tracks the transfer of the 'beneficial interest' in home loans, as well as
any changes in loan servicers. After a borrower takes out a home loan, the
original lender may sell all or a portion of its beneficial interest in the loan
and change loan servicers. The owner of the beneficial interest is entitled
to repayment of the loan. For simplicity, we will refer to the owner of the
beneficial interest as the 'lender.' The servicers of the loan collects
payments from the borrower, send payments to the lender, and handles
administrative aspects of the loan. Many of the companies that participate
in the mortgage industry – by originating loans, buying or investing in the
beneficial interest in loans, or servicing loans – are members of MERS and

Page 3

pay a fee to use the tracking system.[2]

When a borrower takes out a home loan, the borrower executes two
documents in favor of the lender: (1) a promissory note to repay the loan,
and (2) a deed of trust, or mortgage, that transfers legal title in the property
as collateral to secure the loan in the event of default. State laws require
the lender to record the deed in the county in which the property is located.
Any subsequent sale or assignment of the deed must be recorded in the
county records, as well.[3] This recording process became cumbersome to
the mortgage industry, particularly as the trading of loans increased."[4]

The testimony presented at the hearing before this court, also indicated that the

MERS system was initiated due to the title problems which occurred with mortgages

from the "savings and loan days." Mr. Joseph Patry ("Patry"), counsel for MERS,

testified that in the early 1980s, fees were not collected from borrowers to get releases,

compromising the chain of title and "clouding" the title. The MERS system was

established to maintain a more accurate accounting of the loan documents.

The court in *Cervantes* continued its explanation of the MERS system, stating,

"It has become common for original lenders to bundle the beneficial
interest in individual loans and sell them to investors as mortgage-backed
securities, which may themselves be traded.[5] MERS was designed to avoid
the need to record multiple transfers of the deed by serving as the nominal
record holder of the deed on behalf of the original lender and any
subsequent lender.[6]

---

[2] *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011) citing *Jackson v. Morg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn. 2009).

[3] *Cervantes, supra at 5.*

[4] *Cervantes* citing Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Publ. Inst. L. 177, 178 (2010).

[5] *Cervantes* citing *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Exists, supra* at 180; and, *Jackson*, at 490.

[6] *Cervantes* at 5, citing *Jackson.*

At the origination of the loan, MERS is designated in the deed of
trust as a nominee for the lender and the lender's 'successors and assigns,'
and as the deed's 'beneficiary' which holds legal title to the security
interest conveyed. If the lender sells or assigns the beneficial interest in the
loan to another MERS member the change is recorded only in the MERS
database, not in the county records, because MERS continues to hold the
deed on the new lender's behalf. If the beneficial interest in the loan is sold
to a non-MERS member, the transfer of the deed from MERS to the new
lender is recorded in county records and the loan is no longer tracked in the
MERS system.[7]

In the event of a default on the loan, the lender may initiate
foreclosure in its own name, or may appoint a trustee to initiate foreclosure
on the lender's behalf. However, to have the legal power to foreclose, the
trustee must have authority to act as the holder, or agent of the holder, of
both the deed and the note together.[8] The deed and note must be held
together because the holder of the note is only entitled to repayment, and
does not have the right under the deed to use the property as a means to
satisfying repayment. Conversely, the holder of the deed alone does not
have the right to repayment and, thus does not have an interest in
foreclosing on the property to satisfy repayment. One of the main premises
is that the MERS systems impermissibly "splits" the note and deed by
facilitating the transfer of the beneficial interest in the loan among lenders
while maintaining MERS as the nominal holder of the deed."

Based upon the stipulated facts and testimony of Sharon Streitz, First Interstate

has been a MERS member since 2003. Fannie Mae is also a member. First Interstate

and the Debtors entered into the loan documents consisting of the Note and Mortgage on

March 16, 2009. The Mortgage was filed in the Sheridan County land records on March

20, 2009. The Note, executed by the Debtors, by its terms allowed First Interstate "or

anyone who takes this Note by transfer and who is entitled to receive payments under the

Note to be called the 'Note Holder.'"[9]

---

[7] *Cervantes* at 6.

[8] *Cervantes*, citing *Landmark Natl. Bank v. Kesler*, 216 P.3d 158, 167( Kan. 2009).

[9]

First Interstate endorsed the Note in blank and transferred it to Fannie Mae. The

Bank of New York Mellon Trust had possession of the loan documents, on behalf of

Fannie Mae, as the custodian of the documents. Through an agreement with Fannie

Mae, First Interstate continued to service the Note. First Interstate's duties, as servicer,

are established in the "Investor Guidelines."

The language of the Mortgage, states:

> "(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is
> a separate corporation that is acting solely as a nominee for Lender and Lender's
> successors and assigns. MERS is the mortgagee, under this Security Instrument.
> MERS is organized and existing under the laws of Delaware..."
>
> (D) "Lender" is First Interstate Bank..."

Additionally, the Mortgage describes in the Transfer of Rights in the Property"

section:

> "This Security Instrument secures to Lender (i) the repayment of the
> Loan, and all renewals, extensions and modification of the Note, and, (ii)
> the performance of the Borrower's covenants and agreements under this
> Security Instrument and Note. For this purpose, Borrower does hereby
> mortgage, grant and convey to MERS (solely as nominee for Lender and
> Lender's successors and assigns) and to the successors and assignees of
> MERS, the power of sale..."
>
> ...Borrower understands, and agrees that MERS holds only legal title
> to the interests granted by Borrower in this Security Instrument, but, if
> necessary to comply with law or custom, MERS (as nominee for Lender
> and Lender's successors and assigns) has the right: to exercise any or all of
> those interests, including, but not limited to, the right to foreclose and sell
> the Property, and, to take any action required of Lender including, but not
> limited to, releasing and canceling this Security Instrument."

The Mortgage also provides for the sale of the note,

> "The Note or a partial interest in the Note (together with this
> Security Instrument) can be sold one or more times without prior notice to
> Borrower. A sale might result in a change in the entity (known as the

"Loan Servicer") that collects Periodic Payments due under the Note and
this Security Instrument and performs other mortgage loan serving
obligation under this Note, this Security Instrument and Applicable Law."

The court must determine MERS' role in the loan transaction. MERS is described
as both "mortgagee" and "nominee." The case law in Wyoming addressing nominee is
limited. The cases generally involve the Internal Revenue Service and tax issues. The
cases are not helpful to the court in defining "nominee" under the facts of this case.[10]

Other courts within the Tenth Circuit have addressed the definition and authority
of a nominee in the context other than tax issues. The Kansas Court of Appeals found
that only one Kansas case discussed the meaning of nominee in detail, noting that the
meaning of the term may vary from a pure straw man or limited agent to one who has
broader authority.[11]   The Kansas Court determined that whatever authority the nominee
may have comes from the delegation of that authority by the principal. "In its ordinary
meaning, a nominee represent the principal in only a 'nominal capacity' and does not
receive any property or ownership rights of the person represented.[12]   There is no
express grant of any right to MERS to transfer or sell the mortgage or even assign its
rights as nominee. Nor does MERS obtain any right to the borrower's payment or even a
role in receiving payment."[13]

---

[10] *City View Trust v. Hutton*, No. 98-CV-1001-B 1998 WL 1031525, (D. Wyo. Nov. 2, 1988); and, *Jessen
v. U. S. of America, Int. Rev. Ser.*, No. 95-CV-109-B, 1996 U.S. Dist. LEXIS 11192 (D. Wyo. July 29, 1996).

[11] *Landmark National Bank v. Kesler*, 192 P.3d 177, (Kan. 2008).

[12] *Landmark, supra* citing *Thompson v. Meyers*, 505 P.2d 680 (1973).

[13] *Landmark* at 328.

The United States District Court for the District of Utah has addressed the MERS

issue. In cases with identical MERS provisions in deeds of trust, the court held that

"MERS (as nominee for Lender and Lender's Successors and assigns), has the right to

exercise any and all of those interests, including but not limited to, the right to foreclose

and sell the property."[14] The court in *Commonwealth*, held that "By the clear language of

the deeds of trust, MERS has the authority to foreclose and sell the property on behalf of

both the original lender and the "lender's successors."[15]

The definition of "nominee" in Blacks Law Dictionary, is "a person designated to

act in place of another, usually in a very limited way, or a party who holds bare legal title

for the benefit of others."[16]

The court finds that MERS' role in the loan transaction, in the case before this

court, is acting "in the place of another," i.e., that of the Lender. The language

throughout the Mortgage indicates MERS is acting "solely as nominee for Lender and

Lender's successors and assigns;" MERS holds "only legal title" to the interest granted

by the borrower in the security instrument; states that the loan or a partial interest in it

"can be sold one or more times without notice to the Borrower"; and, indicates that

MERS has the right to "foreclose and sell the property." MERS acted in a limited way,

---

[14] *Commonwealth Property Advocates, LLC v. First Horizon Home Loan*, No. 2:10-CV-375, WL 4788209 (D.Utah November 2010); and, *Burnett v. Mortgage Electronic Registration Systems, Inc.*, No. 1:09-CV-69, 2009 WL 3582294 (D.Utah Oct. 27, 2009).

[15] *Commonwealth* at 2.

[16] Black's Law Dictionary, 1072 (7th ed. 1999)

by holding the legal title of the Lender's interest, for the benefit of Lender, for the

purpose of tracking the Lender's interest in the loan. Specifically, (1) MERS was acting

on behalf of First Interstate in its capacity as nominee; and, (2) the Mortgage was

recorded in the land records as required under Wyoming law. Accordingly, the court

concludes the mortgage was properly recorded.

## May the Chapter 7 Trustee avoid Bank's position as a secured creditor § 544(a)(1) and (3).

The applicable Bankruptcy Code sections state:

> "(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;... and
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against and who applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

The trustee has the power to "set aside transfers to third parties and to assume the

guise of a creditor with a judgment against the debtor, if state law so provides."[17]

Section 544(a) is described as allowing the trustee to become the ideal creditor,

irreproachable and without notice, armed with every right and power which is conferred

by the law of the state, upon its most favored creditor who has acquired a lien by legal or

---

[17] *Zilka Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir. 1990).

equitable proceedings. The so-called strong-arm clause, gives the trustee whatever rights a creditor would have at state law to effect collection as of the petition date.[18] Whether the trustee qualifies under § 544(a)(3) is a question of federal law. State law determines whether the trustee's status will defeat the rights of persons against whom the trustee asserts its power.[19]

Under §544(a)(1), trustees are granted the power to avoid any transfer or obligation that a hypothetical creditor with an unsatisfied judicial lien on the debtor's property could avoid under relevant state non-bankruptcy law.[20]

The plain language of § 544(a)(3) grants a bankruptcy trustee all the rights and powers of a bona fide purchaser in addition to the ability to avoid transfers made by the bankruptcy debtor. This section provides that the trustee shall have, as of the commencement of the case, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable to a bona fide purchaser. The rights and powers of a bona fide purchaser include the right to obtain title to property free of certain unrecorded interests; the exercise of that right does not necessarily require the avoidance of a transfer. Under §544(a)(3), a bankruptcy trustee may be a bona fide purchaser without regard to any knowledge of the trustee, and thus the trustee is bound only by information of which a purchaser would have constructive notice.

---

[18] *Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.,)* Civil Action No. 06–cv–01233, 2008 U.S. Dist. LEXIS 45587 (D. Colo. June 6, 2008).

[19] *In re Weisman*, 5 F.3d 417 (9th Cir. 1993).

[20] *In re Haberman*, 516 F.3d 1207, 1210, (10th Cir. 2008).

The Bankruptcy Court for the District of Kansas recently analyzed cases similar to
the facts in the case before this court.[21]  The Kansas Bankruptcy Court relied upon the
Eleventh Court of Appeals case, *In re Halabi*, which thoroughly discussed the issue.[22]

In *Halabi*, the Chapter 7 trustee filed an adversary proceeding seeking a
determination of the priority and validity of a liens on the debtor's real property.  The
debtors had granted a mortgage in the real property to a lender two years before the
debtor filed for bankruptcy protection.  The lender had timely and properly perfected the
note and mortgage.  The initial lender assigned the note and mortgage to a second
creditor, who subsequently assigned it to a third creditor. The assignments were not
recorded in the public records prior to the debtors filing their bankruptcy petition.  There
was an additional assignment after the debtors filed bankruptcy.  The Circuit court held
that the trustee could not prevail because,

> "the assignment of the mortgage, once the original grant by the mortgagor
> to the mortgagee has been perfected, does not involve a "transfer of
> property of the debtor" that would activate the Trustee's strong-arm powers
> and § 544.  The trustee is seeking to avoid the transfer of a perfected
> mortgage in which the debtor has no interest.  The transaction under
> scrutiny here does not involve the transfer of the debtor's real property, to
> which the mortgage attaches."[23]

The Circuit Court further explained, that the trustee was challenging the secondary
sale of the mortgage by the original mortgage and its successors.  But the assignment of

---

[21] *In re Kunze,* Bankruptcy No. 09-41075-7; Adversary No. 11-7029, 2011 WL 4889215 (Bankr. D.Kan.
Oct. 13, 2011) and *In re Lieurance*, Bankrtupcy No. 10-40838, Adversary No. 11-7035, 2011 WL 5041521 (Bankr.
D.Kan. Oct. 24, 2011).

[22] *In re Halabi*, 184 F.3d 1335 (11th Cir. 1999).

[23] *Kunze* , citing *Halabi.*

the perfected mortgage did not involve the transfer of any property belonging to the

debtor or to the debtor's estate. The assignments were merely the transfer of one

mortgagee's interest to a successor mortgagee. The Circuit Court held:

> That the perfected mortgage is neither actually nor potentially the
> property of the debtor is confirmed by §541(d) which provides that
> property in which the debtor holds only legal title and not an equitable
> interest (such as a mortgage) becomes property of the estate only to the
> extent of the debtor's interest. Section 541(d) gives as an example a
> mortgage secured by real property. See *Collier on Bankruptcy* (15th rev. ed)
> Lawrence P. King, ed 1999) at ¶ 541,27 ("[Section 541(a)(1)] reiterates the
> general principle that an interest that is limited in the hands of the debtor is
> equally limited in the hands of the estate, and therefore, where the debtor
> holds bare legal title without any equitable interest, the estate acquires bare
> legal title without any equitable interest in the property."). See also *Norton
> Bankruptcy Law & Practice*, 2d § 51:17 (1997) ("The purpose of the
> section is to insure that secondary mortgage market sales as they are
> currently structured are not subject to challenge by trustees in
> bankruptcy...[24]

This court finds the rationale in the Kansas Bankruptcy Court persuasive and

agrees with the rationale underlying the holding by the Eleventh Circuit Court in *Halabi*.

The transfer of the previously perfected mortgage and note between lenders did not

involve the transfer of an interest in property of the Debtor or of the bankruptcy estate.

As this court found that First Bank's use of MERS as the nominee did not modify the

secured status of First Bank, the subsequent sale of the loan to Fannie Mae did not

involve a transfer of the Debtors' interest. As the Trustee's interest is that of the

Debtors' at the time the bankruptcy case was filed, the Trustee did not have any interest

to avoid.

---

[24] *Halabi* at 1337.

Lastly, the Trustee argues that the Bankruptcy Code allows a trustee to avoid a

mortgage if that mortgage could have been avoided by a hypothetical bona fide purchaser

of the property.[25] Under Wyoming law, the rights of a bona fide purchaser are that (1)

the purchaser is a purchaser in good faith, (2) for valuable consideration; (3) with no

actual, constructive or inquiry notice of any alleged or real infirmities in the title; and (4)

who would be prejudiced by the cancellation or reformation.[26]

The Bankruptcy Court for the District of Kansas analyzed this issue in *In re*

*Lieurance*,[27] discussing the mortgage, the note and the debtor's interest. The law in

Kansas involving mortgages and notes is similar to that of Wyoming. As this court

discussed in *Martinez*,[28] a note is a negotiable instrument as it is "an unconditional

promise to pay a fixed amount of money, with or without interest or other charges

described in the promise; and if it is payable to bearer or to order at the time it is issued or

first comes into possession of a holder..."[29]  The person entitled to enforce the Note is the

"holder of the instrument, or a nonholder in possession of the instrument who has the right

---

[25] § 544(a)(3).

[26] *First Interstate Bank of Sheridan v. First Wyoming Bank*, N.A. Sheridan, 762 P.2d 379, 382 (Wyo. 1988).; *Crompton v Bruce*, 669 P.2d 930, (Wyo 1983); *North Am. Uranium, Inc. v. Johnston*, 316 P.2d 325 (1957); *York v. James*, 148 P.2d 596 (1944).

[27] *In re Lieurance*, Bankruptcy No. 10-40838, Adversary No. 11-7035, 2011 WL 5041521, (Bankr. D.Kan, Oct. 24, 2011).

[28] *In re Martinez*, Case No. 09-21124; Slip Copy, 2011 WL 996705 (Bankr. D. Wyo. Mar. 16, 2011.)

[29] Wyo. Stat § 34.1-3-104 (2009).

Page 13

of a holder..."[30] Under Wyoming law, record of the mortgage is notice of its existence.[31]

Also, under Wyoming law, the mortgage follows the note. As to recording assignments of

the mortgage, the Wyoming Statute only states,

> "The recording of the assignment of a mortgage, shall not in itself,
> be deemed notice of such assignment to the mortgagor, his heirs or personal
> representatives, so as to invalidate any payments made by them or either of
> them to the mortgages.[32]

and,

> To entitle any party to give notice...and to make such foreclosure, it is a
> requisite:
> (Iii)    That the mortgage containing the power of sale has been duly
> recorded; and if it has been assigned, that all assignments
> have been recorded..."[33]

Negotiable instruments that are endorsed in blank may be freely transferred. As

the court in *Horvath stated*, "It is undoubtedly true that a transfer of a secured debt

carries with it the security without formal assignment or delivery."[34] Therefore, whoever

possesses an instrument endorsed in blank has full power to enforce it.

In *Lieurance and Kunze*, the Kansas Bankruptcy Court, like the court in *Halabi*,

held that the note and mortgage executed by the debtor and perfected pre-petition were

---

[30] Wyo. Stat. § 34.1-3-301 (2009).

[31] Wyo. Stat. § 34-1-121.

[32] Wyo. Stat. § 34-1-128 (2009).

[33] Wyo. Stat.§ 34-4-103 (2009).

[34] *In re Horvath,* 641 F.3d 617 (4th Circ. 2011).

Page 14

property of the holder of the note, <u>not the debtor</u>,[35] and therefore the transfers of note and mortgage from one lender to another were not transfers of interest of debtor in property, precluding avoidance of transfer by the trustee under the strong-arm statute.[36] The chapter 7 estate interest in the debtor's real estate is the limited interest, at the time of the commencement of the case which includes legal title and the right to possession, subject to a pre-petition mortgage.

This court determined that the Mortgage in this case were properly perfected when recorded in the Sheridan County land records. The court also agrees with the analysis of *Halibi, Kunze* and *Lieurance* regarding § 544. The Debtors' interest were of the holder of bare legal title and possession. The Debtors did not have any equity in the property. Therefore there is no interest for the Trustee to pursue under the strong-arm statute under § 544(a)(3).

**Conclusion**

The court having determined that the Mortgage was properly recorded prior to the commencement of the Debtors filing for bankruptcy protection and that the Trustee's interest is limited to the interest in the real property that the Debtors had at the time of filing, finds that the Trustee is attempting to avoid the transfer of a perfected mortgage in which the Debtors has no interest. Therefore, the Trustee's arguments fail.

---

[35] Emphasis added.

[36] *In re Lieurance*, Bankruptcy No. 10-40838; Adversary No. 11-7035, 2011 WL 5041521 (Bankr.D.Kan. Oct. 24, 2011).

Page 15

This opinion constitutes the Court's findings of fact and conclusions of law. A

separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this day of November, 2011.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Steve Winship
    Brad Hunsicker
    Timothy Stubson
    Robert Pratte